555 A.2d 518

**Fletcher L. WRIGHT, et al.,**

v.

**Alvin Morris NEALE, et al.**

**No. 919, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 30, 1989.

Certiorari Granted July 6, 1989.

Charles R. Claxton, Rockville, for appellants, Rev. and Mrs. Fletcher L. Wright.

Mary S. Akerley and Sasscer, Claggett, Channing & Bucher, on the brief, Upper Marlboro, for appellant, Allstate Ins. Co.

Benjamin S. Vaughan (Armstrong, Donohue & Ceppos, Chartered, on the brief), Rockville, for appellees.

Argued before ROSALYN B. BELL and WENNER, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, Retired, Specially Assigned.

The single issue presented by this appeal is whether an action for negligent entrustment of a motor vehicle may be maintained against one of two co-owners of the vehicle. The trial court ruled that titling the automobile in joint names precluded the action. We disagree.

On August 25, 1985, Alvin Neale drove a Mercedes sedan, owned by Neale and his wife Margaret, across the center line of Allentown Road in Prince George's County and collided with a car driven by Rev. Fletcher Wright. As a result of the head-on collision, Wright, his wife and two children sustained serious injuries.

Allstate Insurance Company, Wright's insurer, paid the injured parties $95,000.00 under the uninsured motorist coverage provided in the Allstate policy. Thereafter, Wright and Allstate filed suit against Margaret Neale for negligent entrustment in permitting Alvin Neale, who was uninsured, to use the Mercedes.[1] The trial court (Levin, J.)

---

1. Suit was filed against Alvin Neale who admitted liability. The trial judge entered final judgment for Margaret Neale and, pursuant to Rule 2-602, determined that an immediate appeal was appropriate.

granted summary judgment for Neale based upon the theory that a co-owner has no right of control over the other co-owner's use of the vehicle. We assume that the court concluded that one co-owner cannot "supply" a vehicle to the other co-owner since their rights to use the chattel are equal.

The Neale vehicle was purchased in May, 1983. In order to obtain registration, the Neales certified that the vehicle would be "continuously insured while operated throughout the period of registration" and represented that the car was insured by Nationwide Insurance Company. The policy was originally issued to Alvin Neale, but in 1981 Nationwide advised the Neales that it would continue coverage only to Margaret Neale. The exclusion of Alvin Neale followed two at-fault accidents where he was the driver.

Alvin Neale had received numerous citations for moving violations preceding his exclusion from the Nationwide policy. In the two years between his exclusion from the Nationwide policy and the purchase of the Mercedes, he received additional citations resulting in a suspension of his operator's license. Within the time frame of the purchase of the Mercedes and the collision with the Wrights, he was assessed points for three separate speeding violations.

The tort of negligent entrustment was recognized and applied to motor vehicles in *Rounds v. Phillips*, 166 Md. 151, 170 A. 532 (1934). The court adopted the Restatement definition of the tort currently defined in Restatement (Second) of Torts, § 390 (1965), as:

[O]ne who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of physical harm to others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Pellucidly, the purpose of the doctrine is the protection of the public from incompetent drivers.

In *Rounds, supra,* Phillips purchased a car for his minor son. The son's license to drive and registration were later revoked. Phillips then had the car re-titled in his wife's name and obtained reinstatement of his son's license to drive. Thereafter, Phillips was sued by a victim of his son's negligent driving. The court held that Phillips could be held accountable for his son's negligence because he negligently entrusted the vehicle to his son whom he knew to be an incompetent driver. The Court of Appeals stated that the father, as head of the household, could have controlled the use of the vehicle despite the fact that the car was a gift to the son and titled in the wife's name.

Phillips contended that the car was titled in and owned by the mother and, therefore, it was not he who supplied the vehicle. The Court dismissed this argument, stating:

> We do not think that the title to the automobile, ... is conclusive, but that the principle applies not only to the owner of an automobile, but to anyone who has the right to permit and the power to prohibit the use thereof. Having such power and authority, if he does not prohibit his minor son, who he knows is addicted to driving an automobile while under the influence of liquor, and is habitually negligent and reckless in its use, there can be no valid distinction between him, under such circumstances, and the one who has the record title to the automobile in question.

166 Md. at 168, 170 A. 532.

Clearly, *Rounds* establishes that titling alone, at least in parent-child relationships, does not bar an action for negligent entrustment.

Neither does a completed gift defeat a subsequent action for negligent entrustment. We cite from *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76 (1981), on the gift

rationale. Laurence Goldstein, age 20,[2] was married and moved to California in June 1970. He owned several automobiles while he lived in California. In October, 1971, having left his car and his wife behind, he returned to his parents' home. In December, Laurence and his father responded to a newspaper advertisement and a car was purchased. The evidence was conflicting as to who paid for the car. In any event, the car was intended to be for Laurence since each of his parents owned other vehicles.

Several days after obtaining the car Laurence had an accident which injured a passenger in his car. Laurence's dismal traffic record and one suspension were well known to his father. Seeking a directed verdict as to his liability, the father argued, alternatively, that the evidence was insufficient to support a finding that he either (1) supplied the vehicle, (2) had the power to prohibit its use, or (3) that his alleged negligence was a proximate cause of the passenger's injuries.

The court rejected a line of cases holding that negligent entrustment does not apply to situations where a gift is made to an incompetent driver and determined that whether the father made a gift of the car with the requisite knowledge of Laurence's negligent driving history was a jury question. Commenting upon the different view taken in several states that prohibit negligent entrustment actions in gift situations, the Court (Rodowsky, J.) added:

> It seems to us that the principal features of the tort lie in the knowledge of the supplier concerning the dangerous propensities of the entrustee and in the foreseeability of harm. If one who gives an automobile to a member of his immediate family has the requisite knowledge, and the other elements of the tort are satisfied, we can see no

---

2. The age of majority was not reduced to 18 until 1973. Laurence had not attained legal age at the time of the accident herein.

reason for denying liability exclusively on the basis that title is transferred in addition to possession.

290 Md. at 488, 431 A.2d 76.

The most recent case on negligent entrustment from this Court is *Morris v. Weddington,* 74 Md.App. 650, 539 A.2d 1145 (1988). The Aults, co-owners of a van, obtained a summary judgment at trial in a suit charging them with negligent entrustment of their van to their son-in-law, Weddington. The van was used by Weddington the day prior to the accident with the permission of Mr. Ault. No permission was requested or granted on the following day, although Weddington had the use of the van for a week while his wife's car was being repaired. The Aults were aware that their insurance policy excluded Weddington as a covered driver due to his prior motor vehicle violations. We reversed (Karwacki, J.), concluding that a jury question was presented as to whether the Aults had knowledge of Weddington's dangerous driving habits and whether they "supplied" the van. It is noteworthy that Mrs. Ault, a co-owner, could be considered a supplier since she knew of Weddington's access to the van and did not exercise her "power to prohibit the use of" the van, notwithstanding that her co-owner husband gave his permission for its use.

No Maryland appellate decision has addressed directly the issue of negligent entrustment involving co-owners. As we have seen from the cases cited herein, in the fifty-five years since the first *Rounds* case the cases have been cast as either gifts or bailments. At least two states have dealt with the co-owner issue. The Supreme Court of Kansas has held that negligent entrustment may exist between co-owners. *McCart v. Muir,* 230 Kan. 618, 641 P.2d 384 (1982). Kansas defines negligent entrustment as "knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an incompetent or habitually careless driver."

Title to the car in *McCart* was in William Muir and his seventeen-year-old son Stephen. The father had co-signed the loan documents to enable Stephen to purchase the car. Stephen was involved in four vehicular accidents within six

months prior to the fatal collision. As a result of Stephen's negligence while intoxicated, the final crash claimed the lives of five young people; the only survivor was a two-year-old passenger in the car Stephen struck.

The Kansas Court held that all elements of negligent entrustment were shown:

1. the father, as co-signer of the automobile finance papers, and as co-owner of the certificate of title, was instrumental in furnishing the motor vehicle to his son;

2. the father knew or should have known Stephen was an incompetent driver; and

3. the negligence of Stephen in operating the vehicle was a cause of the damages.

Although the Court acknowledged that Stephen was not an emancipated child and was, therefore, under his father's control, the "furnishing" of the vehicle was based upon the father's role in enabling the son to acquire the vehicle, not upon his parental authority to preclude the son from driving.

The precise issue raised by the case before us was addressed by the Court of Appeal, First District, Division 3 of California, in an appeal from the Superior Court of Alameda County. Cited as *Mettelka v. Superior Court*, 173 Cal.App. 3d 1245, 219 Cal.Rptr. 697 (1985), the issue was whether the Superior Court erred in refusing to allow a negligent entrustment cause of action solely because the defendant's car was co-owned by the driver and his father. The Court of Appeal reversed and remanded to permit the action.

Citing *Krum v. Malloy*, 22 Cal.2d 132, 137 P.2d 18 (1943), the Court of Appeal said:

Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or reck-

lessness is known or should have been known by the owner.

Under the theory of negligent entrustment, liability is imposed on vehicle owner or permitter because of his or her own independent negligence and not the negligence of the driver. . . .

Turning to the co-ownership issue in *Krum*, the Court commented:

The finding that Claire and Paul were co-owners of the automobile is not the equivalent of a finding that Paul's operation of the car was with, or was without, the permission of Claire. It is true that the power to permit is the correlation of the power to forbid . . . and that each owner of property in common is entitled to possess and use the whole property. . . . It is also true that the possession of one co-owner is regarded as possession for all, . . . but none is entitled to a possession or usage which *excludes* for any period of time a like possession or usage by his or her co-owners. A co-owner, therefore, of an automobile would need the permission, express or implied, of his co-owners to that end. . . .

In other words, it is a question of fact in cases of co-ownership, as it is in cases of single ownership, whether the operation of an automobile is with or without the consent, express or implied, of an owner who is not personally participating in such operation. The mere fact of co-ownership does not necessarily or conclusively establish that the common owners have consented to any usage or possession among themselves of a type for which permission is essential. . . . The mere fact of co-ownership does not prevent one co-owner from controlling use of the vehicle by the other co-owner.

We do not think the public purpose served by the doctrine of negligent entrustment of motor vehicles, protection of the public from incompetent drivers, should be defeated by the single device of registering a vehicle in two or more names as co-owners. Were we to adopt the reasoning of the trial court, that a co-owner has no right to control the

use of a vehicle by another co-owner, the doctrine of negligent entrustment would cease to be a cause of action by the mere fact of titling. Any owner, for example, could permit a known incompetent driver to use a vehicle on the highways of this state by making the incompetent driver a co-owner.

The elements of negligent entrustment, under *Rounds, supra,* are:

(1) The making available to another a chattel which the supplier

(2) knows or should have known the user is likely to use in a manner involving risk of physical harm to others

(3) the supplier should expect to be endangered by its use.

That analysis requires fact-finding; it is not satisfied by reference to titling alone.

Viewing the record in a light most favorable to the parties against whom the motion was directed, Wright and Allstate, there was evidence that Mrs. Neale enabled Mr. Neale to become an owner of the car by joining with him in obtaining registration when his lack of insurance precluded him from doing so in his own name. Obviously, we assume that she was aware of his prior driving record and of his exclusion from the liability insurance she maintained on the vehicle. She permitted him to use the car without protest. The evidence presented was sufficient for a trier of fact to conclude that Mrs. Neale negligently entrusted the co-owned vehicle to her husband. The trial court erred, therefore, in granting summary judgment for Mrs. Neale.

Finally, Mrs. Neale alleges that she could neither prohibit her husband from using the car, nor did she have any legal duty to prohibit him from driving without insurance. We point out that equal property right in the vehicle is not the issue. Her liability flows from her participation in making him an owner with knowledge of his driving habits. In short, a trier of fact may reasonably conclude that she "supplied" the vehicle. Mr. Neale's right to use the car is a

link between Mrs. Neale's negligence in his becoming an owner and the subsequent injuries to the Wright family, rather than a defense as Mrs. Neale contends.

As to her having no legal duty to prohibit him from driving without insurance, we do not disagree. She cannot escape the fact, however, that she had a duty not to entrust him with a car that she co-owned when she knew he was not a competent driver. She is in no different position than if she owned the car individually. As we said in *Weddington, supra*, the co-owner could still be considered a supplier, because she did not use her power to prohibit the use of the vehicle despite the permission granted by the other owner, her husband.

JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR TRIAL.

COSTS TO BE PAID BY APPELLEES.